J-S33022-16

2016 PA Super 119

DAVID ECHEVERRIA, INDIVIDUALLY AND AS CHILD AND ADMINISTRATOR OF THE ESTATE OF DONNA DAY, DECEASED

        Appellant

        v.

THOMAS HOLLEY, RENEE HOLLEY, AND TOBY HOLLEY

        v.

WILLIAM MEARKLE AND KIMBERLY MEARKLE

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1342 WDA 2015

Appeal from the Judgment Entered July 15, 2015
In the Court of Common Pleas of Bedford County
Civil Division at No(s): 272-2012

ROBIN R. VINEYARD, INDIVIDUALLY AND AS SPOUSE AND ADMINISTRATOR OF THE ESTATE OF TARA D. VINEYARD, DECEASED

        Appellant

        v.

THOMAS HOLLEY, RENEE HOLLEY, AND TOBY HOLLEY

        v.

WILLIAM MEARKLE AND KIMBERLY MEARKLE

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1343 WDA 2015

Appeal from the Judgment Entered July 15, 2015
In the Court of Common Pleas of Bedford County

J-S33022-16

Civil Division at No(s): 412-2012

| ELPIDIO SANTIAGO RAMIREZ, INDIVIDUALLY AND AS PARENT AND ADMINISTRATOR OF THE ESTATE OF ANDRE RAMIREZ, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- |
| Appellant | |
| v. | |
| THOMAS HOLLEY, RENEE HOLLEY, AND TOBY HOLLEY | |
| v. | |
| WILLIAM MEARKLE AND KIMBERLY MEARKLE | |
| | No. 1344 WDA 2015 |

Appeal from the Judgment Entered July 15, 2015
In the Court of Common Pleas of Bedford County
Civil Division at No(s): 273-2012

BEFORE:  GANTMAN, P.J., OLSON and FITZGERALD,* JJ.

OPINION BY OLSON, J.:                     **FILED JUNE 14, 2016**

Appellants, David Echeverria (individually and as child and administrator of the estate of decedent Donna Day), Robin R. Vinyard (individually and as spouse and administrator of the estate of decedent Tara D. Vinyard), and Elpidio Santiago Ramirez (individually and as parent and administrator of the estate of decedent Andre Ramirez), appeal from the order entered on July 15, 2015 in these consolidated cases that granted summary judgment in favor of defendants, Thomas Holley, Renee Holley,

* Former Justice specially assigned to the Superior Court.

- 2 -

and Toby Holley, and additional defendants, William Mearkle and Kimberly Mearkle. We vacate in part and remand.

The undisputed facts are as follows. On the evening of October 19, 2010, a fire at a two-unit residential property located on Black Valley Road in Bedford County, Pennsylvania claimed the lives of three individuals, Donna Day, Tara D. Vineyard, and Andre Ramirez. The precise cause of the fire was never determined. The Black Valley Road property was a multi-family structure with a two-story unit in the front and a two-story unit in the back. The property is part of a rural tract of land that consists of approximately 100 acres of farmland.

William and Kimberly Mearkle (husband and wife) purchased the property in November 2003. The Mearkles rented both units at the property to tenants. During this time, the Mearkles performed only minor repairs on the property. After seven years of ownership, the Mearkles sold the property to Toby Holley on July 19, 2010. Toby owned the property for approximately three months when the October 19, 2010 fire occurred. Toby performed no modifications or repair work at the property before the fire.

Donna Day began her tenancy at the property by renting a unit from the Mearkles. She continued her tenancy in the same rental unit after Toby purchased the property. On the night of the fire, Tara Vineyard was visiting Day at her rental unit. Andre Ramirez, Day's grandson, was also present at Day's unit.

Appellants Echeverria and Ramirez filed their complaints on March 16, 2012. Appellant Vineyard filed his complaint on April 18, 2012. Except for the identity of the claimants and the decedents, all of the complaints contain identical averments of fact and contentions of law. The complaints allege two theories of recovery. First, the complaints allege a common law negligence claim for failure to install smoke detectors at the property. Second, the complaints allege that the defendants negligently failed to maintain electrical wiring at the property. Appellants named Toby Holley and Thomas and Renee Holley (Toby's parents) as defendants, averring that Thomas and Renee served as *de facto* owners or managers of the property. By order of November 16, 2012, the trial court consolidated the cases for purposes of discovery and trial.

The Holleys filed preliminary objections in the nature of a demurrer to Appellants' common law negligence claims based on the failure to install smoke detectors. The Holleys argued that they owed no duty to install the devices under Pennsylvania law. Appellants opposed the objections, asserting that the duty to install smoke detectors was part of a landlord's duty to maintain his premises in a safe condition. On November 16, 2012, the trial court sustained the Holleys' preliminary objections and dismissed Appellants' common law negligence claims asserting failure to install smoke detectors. The court concluded that a landlord's general duty to protect tenants from dangerous conditions did not include the installation of smoke detectors. The dismissal order allowed Appellants to proceed on their faulty

wiring claim and allowed Appellants to file amended complaints within 20 days.

Appellants did not file amended complaints or seek reconsideration or interlocutory appellate review of the November 16, 2012 dismissal order. As a result, the Holleys filed answers and new matter to Appellants' complaints and joined the Mearkles as additional defendants. For the next two years, the case proceeded with discovery on Appellants' faulty wiring claim.

On July 29, 2014, nearly two years after the trial court's dismissal of Appellants' common law negligent failure to install smoke detector claim and outside the statute of limitations for claims arising from the October 2010 fire, Appellants moved the trial court for leave to amend their complaints. Citing the Pennsylvania Uniform Construction Code, 35 P.S. §§ 7210.101, *et seq.*, Appellants sought through their motion to add negligence *per se* claims against the defendants, claiming that the applicable building codes compelled defendants to install smoke detectors at the property. By order of October 2, 2014, the trial court denied Appellants' motion because it sought to add a new cause of action outside the limitations period. The trial court also determined that Appellants' proposed amendment would be futile since there was no event that triggered application of the statutory scheme at existing properties such as the one owned, or previously owned, by the defendants.

On April 28, 2014 the Mearkles filed a motion for summary judgment. Subsequently, Appellants moved the trial court to reconsider its October 2,

2014 order denying Appellants' motion to amend their complaints. On May 15, 2015, the Holleys moved for summary judgment alleging, among other things, that Appellants failed to support their claim that the fire was caused by faulty wiring. Appellants conceded that they could not establish the cause of the fire and, thus, could not oppose the motions for summary judgment. On July 15, 2015, the trial court granted the defendants' motions for summary judgment and denied Appellants' motion for reconsideration. This appeal followed.[1]

> Appellants raise the following questions for our review:
>
> Did the trial court err in its [o]rder of November 20, 2012 when it granted [the defendants'] motion to strike any common law claims of negligence arising out of the lack of smoke alarms in the two-unit rental property?
>
> Did the trial court err in its [o]rder of October 3, 2014 when it denied Appellants' motion to amend their [c]omplaints to add a claim of negligence *per se*?
>
> Did the trial court abuse its discretion in its [o]rder of July 15, 2015 when it denied Appellants' motion for reconsideration of [a prior] requested amendment while at the same time dismissing the case and leaving Appellants without a remedy?

Appellants' Brief at 3-4.

Appellants argue in their first issue that the trial court erred in sustaining preliminary objections to their common law claim alleging that

_____

[1] Both Appellants and the trial court complied with the requirements of Pa.R.A.P. 1925(b).

- 6 -

defendants negligently failed to install smoke detectors at the property. Specifically, Appellants contend that the trial court erroneously held that a Pennsylvania landlord's duty to protect tenants from dangerous conditions did not extend to the installation of smoke detectors. We agree.

We apply the following standard of review in addressing Appellants' first issue.

> As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.
>
> *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citations and internal quotation marks omitted)[; a]ccord[] *Friedman v. Corbett*, 72 A.3d 255, 257 n.2 (Pa. 2013).
>
> Furthermore,
>
> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.... Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 162 (Pa. Super. 2013) (citation omitted).

*Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.*, 92 A.3d 1191, 1195 (Pa. Super. 2014).

In Pennsylvania, it is well settled that landlords owe a duty to protect tenants from injury or loss arising out of a negligent failure to maintain a rental property in a safe condition. *Feld v. Merriam*, 485 A.2d 742, 745 (Pa. 1984). A tenant seeking to recover damages stemming from the condition of a rental party may pursue claims sounding in ordinary negligence or a breach of the implied warranty of habitability. We discuss both of these theories below.

This Court observed in *Rivera v. Selfon Home Repairs and Improvements Co.*, 439 A.2d 739 (Pa. Super. 1982) that our Supreme Court in 1979 adopted an implied warranty of habitability in residential leases. *See Pugh v. Holmes*, 405 A.2d 897 (Pa. 1979). The Court in *Pugh* stated:

> The implied warranty is designed to insure that a landlord will provide facilities and services vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes[.] ... This warranty is applicable both at the beginning of the lease and throughout its duration[.]
>
> Additionally ... to assert a breach of the implied warranty of habitability, a tenant must prove he or she gave notice to the landlord of the defect or condition, that he (the landlord) had a reasonable opportunity to make the necessary repairs, and that he failed to do so.

*Pugh*, 405 A.2d at 905-906.

In **Rivera**, this Court explained that the implied warranty of habitability is reflected in the Restatement of Property (Second) § 17.6, comment a, b, c (1977), which represents the modern weight of authority in this area:

Landlord Under Legal Duty to Repair Dangerous Condition

A landlord is subject to liability for physical harm caused to the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of

(1) an implied warranty of habitability;

or

(2) a duty created by statute or administrative regulation.

**Rivera**, 439 A.2d at 742.

In terms of ordinary negligence, this Court has held that the basic elements of that cause of action, including the existence of a duty, a breach thereof, a causal connection between the breach and the injury, and actual loss, apply in landlord tenant disputes. **Keck v. Doughman**, 572 A.2d 724, 727 (Pa. Super. 1990). When proceeding under the theory of ordinary negligence, however, the tenant need not give notice as is required where a breach of the implied warranty of habitability is alleged and the landlord's duty to correct conditions at the property extends only to those conditions that are discoverable through the exercise of reasonable diligence. **See id.** at 728. Lastly, a tenant seeking to recover under the theory of ordinary

negligence must establish damages caused by the landlord's breach of a statutory or specifically defined duty that depends upon the relationship of the parties. *Id.*

Our review of appellate case law reveals some confusion regarding the interplay of ordinary negligence and the implied warranty of habitability in landlord tenant litigation. *See id.*; *see also McIntyre, ex rel. Howard v. Philadelphia Housing Authority*, 816 A.2d 1204, 1212 (Pa. Cmwlth. 2003). We reiterate, therefore, that a breach of the implied warranty of habitability represents a contract claim for which only contract remedies are available and **not** a tort claim for which personal injury damages are available. As our Supreme Court held, the implied warranty of habitability entitles claimants only to traditional contract damages such as termination of the obligation to pay rent where the tenant surrenders possession of the premises, rent abatement where the tenant remains in possession, the remedy of "repair and deduct," and specific performance. *Pugh*, 405 A.2d at 907-908; *Staley v. Bouril*, 718 A.2d 283, 285 (Pa. 1998). In this case, the complaints allege claims sounding in ordinary negligence, not a breach of the implied warranty of habitability. Thus, we are not confronted with claims seeking tort damages for alleged violations of contractual principles.

Although damages for personal injuries are not available under the implied warranty of habitability, appellate authority directs the trial courts, pursuant to the Restatement of Property (Second) § 17.6, to consider

statutory and regulatory duties and the implied warranty of habitability as standards for assessing whether a landlord has breached a duty to correct a dangerous condition at a leased premises. *Rivera*, *supra*; *McIntyre*, *supra*. Mindful of this approach to ascertaining the applicable standard of care, we cannot agree with the trial court that Appellants failed to allege sufficient facts to hold the defendants liable under a theory of common law negligence.

The facts alleged, and the reasonable inferences to be drawn therefrom, were sufficient, if proved, to support a finding that a dangerous condition (the absence of smoke detectors) existed with respect to the leased premises, that the existence of the condition was in violation of an implied warranty of habitability or a statutory or administrative regulation, that the landlords were aware of the dangerous condition, that the landlords failed to exercise reasonable care to correct the condition, and that the dangerous condition harmed the tenants. *See Asper v. Haffley*, 458 A.2d 1364, 1369 (Pa. Super. 1983) (plaintiff alleged sufficient facts to support common law negligence claim asserting that lack of an alternate exit presented dangerous condition in rental property stricken by fire). In short, it was far from clear at the preliminary stages of this case that Appellants would be unable to prove any set of facts legally sufficient to establish their right to relief.

Moreover, the rationale employed by the trial court constituted an inappropriate basis upon which to sustain a demurrer in favor of the defendants. Here, the trial court reasoned that the absence of smoke detectors is immediately noticeable and inexpensively remedied, which factors auger in favor of placing the onus of installing smoke detectors upon the tenants. The trial court also reasoned that it is inherently difficult to impose a duty to install smoke detectors on landlords. In this context, the court asked who would be responsible for changing batteries or conducting routine tests on the instruments. What the trial court failed to recognize, however, is that a landlord is under a duty to maintain his property in a safe condition. This standard is sufficiently broad to incorporate the safety status of a rental property that lacks smoke detection devices. Additionally, the factors cited by the trial court are more relevant to the factfinder's assessment of whether the absence of smoke detectors constitutes a dangerous condition that harmed Appellants. Thus, the trial court erred in dismissing Appellants' common law claim alleging a negligent failure to install smoke detectors.[2]

_____

[2] In reaching this conclusion, we place little weight on the trial court decisions cited by the parties. As a preliminary matter, trial court decisions are not binding upon the Superior Court. **See Coleman v. Wyeth Pharaceuticals, Inc.**, 6 A.3d 502, 522 n.11 (Pa. Super. 2010), *appeal denied*, 24 A.3d 361 (Pa. 2011). Additionally, for the reasons that follow, we discern little guidance from the prior trial court opinions.

*(Footnote Continued Next Page)*

*(Footnote Continued)* ─────────────────

Appellants cite ***Dell v. Reading***, 1994 WL 1251169 (Pa. Com. Pl. Phila. Co. 1994) and ***Myers v. Philadelphia Housing Authority***, 1986 WL 501510 (Pa. Com. Pl. Phila. Co. 1986) in support of their contention that a landlord owes a duty under Pennsylvania law to install smoke detectors. In ***Dell***, two third-floor tenants in an apartment building filed an action against the property owner to recover damages sustained from a fire. At trial, a fire investigator testified that the fire originated in a first floor apartment as a result of careless cigarette smoking. In addition, the investigator concluded that the lack of smoke detectors was the primary factor in delaying one of the tenant's awareness of the fire and precluding her ability to exit safely from the building. The property owner challenged an adverse verdict entered after a non-jury trial, alleging that the court erred in failing to conclude that careless smoking constituted a superseding cause of the fire. In rejecting this claim, the trial court reasoned that the property owner was negligent in not installing smoke detectors and that the tenant's injuries were a foreseeable result of that negligent act. When read in context, it is evident that, while the court in ***Dell*** stated that the landlord was negligent in failing to install smoke detectors, the nature and scope of a property owner's duty under Pennsylvania law was not the focus of the court's attention. ***Myers***, too, offers little helpful guidance. There, the defendant in a similar case moved for post-trial relief, claiming that the court erred in permitting the plaintiff's expert to testify that a landlord owes a duty to install smoke detectors. The court concluded that the defendant was not entitled to relief since it failed to raise an objection at trial.

For their part, defendants rely on ***Sweigart v. Kulp***, 45 Pa.D&C.3d 435 (Pa. Com. Pl. Lancaster Co. 1987). In ***Sweigart***, a tenant filed suit against the owner of a rental property to recover damages resulting from a fire. The complaint alleged that the property owner negligently failed to install smoke detectors at the leased premises. Thereafter, the property owner filed preliminary objections in the nature of a demurrer asserting that he owned no duty to install smoke detectors in a residence that is wholly within the control of the tenant. The court sustained the owner's objection in the absence of appellate authority imposing a duty under similar circumstances. In ***Sweigart***, however, the court granted the tenant leave to amend his complaint. More importantly, the court in ***Sweigart***, as was the case in ***Dell*** and ***Myers***, did not discuss whether the tenant alleged sufficient facts to withstand preliminary objections under the legal framework we have set forth above.

- 13 -

Appellants next argue that the trial court erred in refusing to permit them to amend their complaints by adding, outside the limitations period, claims alleging that the defendants were negligent *per se* because they violated provisions of the Pennsylvania Uniform Construction Code, 35 P.S. §§ 7210.101, *et. seq.*, which require installation of smoke detectors in residential properties. Appellants contend that their proposed amendments were not futile since they asserted viable claims based upon the defendants' violation of legislative enactments that require smoke detectors in existing residential properties. Appellants also argue that their proposal to add claims alleging negligence *per se* would merely amplify their common law negligence claims asserted prior to the expiration of the statute of limitations.

Our Supreme Court articulated the principles governing this issue in *Laursen v. Gen. Hosp. of Monroe Cty.*, 431 A.2d 237 (Pa. 1981). In *Laursen*, the Court held:

> In general, amendments to pleadings are liberally allowed. But, (a)n amendment introducing a new cause of action will not be permitted after the [s]tatute of [l]imitations has run in favor of a defendant[.] ... However, if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the [s]tatute of [l]imitations has already run.

*Laursen*, 431 A.2d at 239-240, *quoting Schaffer v. Larzelere*, 189 A.2d 267, 270 (Pa. 1963) (citations omitted). In *Laursen*, the plaintiff in a medical malpractice action sought to amend the alleged date of the

negligent act upon which he based his cause of action, even though he offered the proposed amendment outside the limitations period. The Court permitted the proposed amendment because it merely amplified the averments in the original complaint and offered no new legal theories or factual grounds for the defendants' liability. **See Laursen**, 431 A.2d at 240 (This is, therefore, "a case of adding to or amplifying the original statement within the rule recognized in some of our cases (and is not a case where) a different theory is relied on, new grounds ... set up, and other acts of negligence entirely different ... alleged (in the proposed amendment).") (citation omitted).

In contrast to **Laursen**, allowing Appellants' proposed amendment in this case would be tantamount to allowing a new cause of action outside the statute of limitations. Although Appellants are correct that negligence *per se* is simply a variant of ordinary negligence, they concede that negligence *per se* serves as an evidentiary presumption that allows the factfinder to infer a breach of the standard of care from a defendant's failure to comply with a statutory or regulatory requirement. **See** Appellants' Brief at 25-27 (collecting cases). It follows, then, that in terms of the assessment to be made by the factfinder, the introduction of the doctrine of negligence *per se* functions as a significant alteration of the evidentiary burdens allocated to the parties under the theory of ordinary negligence. Among other things, adding the doctrine of negligence *per se* outside the limitations period

alleviates Appellants' obligation to prove that the failure to install smoke detectors created a dangerous condition at the property, the dispositive inquiry in establishing the applicable standard of care in this dispute. Such a redistribution of the parties' obligations is akin to the introduction of a new legal theory outside the limitations period, which our procedural rules do not permit. Accordingly, Appellants are not entitled to relief on their second claim.[3]

In their final claim, Appellants assert that the trial court erred in refusing their motion for reconsideration because the order denying their request had the effect of putting them out of court. In view of our disposition of Appellants' first issue, we decline to address this claim.

Order of November 16, 2012 vacated. Case remanded for further proceedings. Jurisdiction relinquished.

_____

[3] Appellants are hardly prejudiced by this ruling. At trial, they are free to introduce developments in statutory and regulatory enactments, as well as common practices amongst contractors, renovators, and landlords, to establish the applicable standard of care and any departure therefrom in this case. In light of our resolution of this issue, we need not address Appellants' arguments relating to the viability of their proposed negligence *per se* claims under the Pennsylvania Uniform Construction Act, 35 P.S. §§ 7210.101, *et*. *seq*.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/14/2016</u>